**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MATTHEW ROY MCKINNEY,

        Petitioner,

v.

                                   CASE NO. 06-CV-13691
                                   HONORABLE DENISE PAGE HOOD

LINDA METRISH,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**I.      INTRODUCTION**

Michigan prisoner Matthew Roy McKinney ("Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of assault with intent to commit murder, Mich. Comp. L. § 750.83, assault with a dangerous weapon, Mich. Comp. L. § 750.82, and possession of a firearm during the commission of a felony, Mich. Comp. L. § 750.227b, following a jury trial in the Macomb County Circuit Court. He was sentenced to concurrent terms of 15 to 30 years imprisonment and one to four years imprisonment on the assault convictions and to a consecutive term of two years imprisonment on the felony firearm conviction in 2003.

In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence, the jury instructions, the conduct of the prosecutor, and the effectiveness of trial counsel. For the reasons stated herein, the Court denies the petition for writ of habeas corpus.

**II.     FACTS**

Petitioner's convictions arise from an assault upon his ex-wife in Macomb County, Michigan on June 14, 2002. The Michigan Court of Appeals set forth the basic facts, which are

presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> Defendant's convictions arose from a June 14, 2002, incident involving his former wife, Pamela McKinney. She and defendant were married in January 1992, separated in 1995, and divorced in 1997. Pamela McKinney testified that in April 2002, she obtained a personal protection order (PPO) against defendant because he, for six months, terrorized her after the divorce by calling her in the middle of night; by writing the word "soon" on her car and her mail/correspondence (a bill); and by stating "soon" to her after she and defendant met in an area restaurant. At that restaurant meeting, defendant discussed the circumstances of their separation and made the statement, "If my wife left me, if that really, in fact, happened, I'd be a crazy man."Pamela McKinney testified that she was terrified after the meeting with defendant, so she obtained the PPO.

> On the morning in question, Pamela McKinney was driving her white Neon to work in a southerly direction when she observed defendant driving a van approaching her from the opposite direction. Defendant rammed her Neon head-on with the van. The force of the impact shattered the Neon's windshield. Pamela McKinney testified that when she saw defendant's eyes, she knew he wanted to harm her. She reached for her cellular phone, but the battery was dead. She proceeded as fast as possible away when she heard gunshots. She decided to drive to the police department, approximately one-half mile away. The road was under construction and two lanes were barricaded. She slowed to make a right turn, but was prevented by the amount of traffic. Defendant rammed her vehicle again with the van. The Neon veered into the construction area, but she continued to drive, attempting to reach the police station. She struck barricades as she was driving and, to avoid being shot, she drove the Neon in a zigzag manner. A bullet struck the Neon. The bullet traveled through the driver seat and struck her in the back.FN1Pamela McKinney was forced to stop driving when her car became stuck in a hole in an unpaved area of the road. Yelling for assistance, she jumped out of the car and ran toward traffic. Defendant fled the scene on foot. The police and EMS were at the scene and she was taken to the hospital. Pamela McKinney testified that after her release from the hospital later that day, she temporarily relocated until after defendant was arrested.

> FN1. The bullet did not break Pamela McKinney's skin and she suffered extensive bruising.

> Witnesses to the incident similarly described the events of that day. Michael Zynda testified that he observed Pamela McKinney in a white car being chased by defendant in a van. Zynda had to drive up on the curb to get out of the way. Zynda observed defendant shoot at Pamela McKinney with a shotgun. Defendant "pumped" the shotgun and Zynda heard two gunshots. After the white car became stuck in a hole, Zynda no longer saw the van.

> Keith Ringstad and Clifford Ringstad were working in the area at the time in

question. Keith Ringstad observed the car chase. When Pamela McKinney stopped at the stop sign, Keith Ringstad saw both vehicles hit their breaks before the van rammed the Neon, but he testified that the impact did not force the Neon into traffic. Keith Ringstad testified that the Neon made the turn at approximately twenty or twenty-five miles per hour. Clifford Ringstad also testified that he observed the van following the Neon and that the force of the impact did not force the Neon into traffic. He heard three gunshots after the Neon and van turned the corner.

Jerry Pirrotta testified that when he initially observed the Neon and van, he believed the drivers were racing. Pirrotta saw black smoke, which he believed was backfire. Pirrotta heard the minivan "revving up" to accelerate. Pirrotta realized the black smoke was not from backfire but instead from gunshots.

Hibib Maktabi testified that he observed the van following the Neon. Maktabi testified that he observed defendant fire two or three gunshots as he leaned out the window of the van.

Cindy Colson observed the Neon approach her vehicle rapidly from behind. Colson heard five loud bangs and, after the Neon crashed, Colson left her vehicle and approached the Neon to assist. As she approached the Neon, Pamela McKinney yelled, "get down, he has a gun." Colson testified that she saw a burgundy vehicle with defendant outside the window and the vehicle disappeared when it turned on a side street.

When the police recovered the van, their investigation revealed that defendant was the registered owner. A visual inspection revealed that the van sustained heavy front-end damage and had three holes in the windshield. Burn markings surrounded the edges of the holes in the windshield, indicating that a weapon had been placed next to the windshield and fired. Inside the van, the police recovered a 12-gauge shotgun, five spent 12-gauge shotgun cartridges, a hunting knife, shovel, sleeping bag, rubber gloves and karate sticks. Following deliberations, the jury convicted defendant as charged.

*People v. McKinney*, No. 250929, 2005 WL 292746, *1-2 (Mich. Ct. App. Feb. 8, 2005)

(unpublished).

Following his convictions and sentencing, Petitioner filed an appeal as of right with the

Michigan Court of Appeals raising several claims of error, including those raised in the present

petition. The Michigan Court of Appeals affirmed Petitioner's convictions. *Id.* Petitioner then

filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a

standard order. *People v. McKinney*, 474 Mich. 856, 702 N.W.2d 582 (2005).

Petitioner thereafter submitted his federal habeas petition asserting the following claims:

I.      The conviction should be overturned because there was insufficient credible evidence to prove that the Petitioner committed the crimes charged.

II.     The trial court's instructional errors denied the Petitioner his due process rights under the constitutions; therefore, a new trial is required.

III.    The prosecutor's actions denied the Petitioner a fair trial and his due process rights under the Michigan and Federal Constitutions.

IV.     If the Court doesn't consider any of the questions presented because of a lack of objection by trial counsel, then the Petitioner is entitled to a new trial because of ineffective assistance of counsel.

V.      The trial attorney failed to investigate an insanity defense and failed to produce an independent psychiatric evaluation for the defense, thereby depriving Petitioner McKinney of a viable insanity defense, his constitutional right to the effective assistance of counsel, his right to present a defense and a fair trial.

Respondent has filed an answer to the petition asserting that it should because the claims lack merit and/or are barred by procedural default.

## III.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., governs this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d

667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. ANALYSIS

### A. Insufficient Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecutor presented insufficient evidence to support his convictions. With regard to the assault with intent to murder and felony firearm convictions, Petitioner claims that the prosecution failed to present sufficient evidence that he had the specific intent to murder. As for the assault with a dangerous weapon conviction, Petitioner claims that he should have been charged with a lesser offense such as malicious destruction of property because the prosecution told the jury that Petitioner was attempting to disable the victim's car. Respondent contends that these claims lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was reasonable.

Under Michigan law, a conviction for assault with intent to murder requires proof beyond a reasonable doubt that the defendant committed: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Hoffman*, 225

Mich. App 103, 111, 570 N.W.2d 146 (1997); *see* Mich. Comp. L. § 750.83. Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind. *See People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997). The elements of assault with a dangerous weapon are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable fear or apprehension of an immediate battery. *See People v. Lawton*, 196 Mich. App. 341, 349, 492 N.W.2d 810 (1992); Mich. Comp. L. § 750.750.82. An automobile can constitute a "dangerous weapon" when employed in a manner capable of inflicting serious injury. *See People v. Blacksmith*, 66 Mich. App. 216, 221, 238 N.W.2d 810 (1975). The elements of felony firearm are possession of a firearm during the commission or attempted commission of a felony. *See People v. Moore*, 470 Mich. 56, 58, 679 N.W.2d 41 (2004); Mich. Comp. L. § 750.227b.

Applying the *Jackson* standard and considering the elements of the charged offenses, the Michigan Court of Appeals concluded that the prosecution presented sufficient evidence to support Petitioner's convictions. The court explained in relevant part:

> In this case, when the evidence is viewed in the light most favorable to the prosecution, we find that the evidence was more than sufficient to support defendant's convictions. Pamela McKinney identified defendant as the person who rammed her vehicle, chased her, and fired gunshots at her vehicle. A 12-gauge shotgun with five spent shells was retrieved from defendant's van. In addition to evidence establishing that defendant shot bullet holes in the van's windshield, eyewitness testimony demonstrated that defendant leaned outside the van's window to fire the gun. The eyewitnesses also testified that defendant accelerated the van and "pumped" and reloaded the gun. Significantly, the prosecution submitted evidence that the gunshot damage to Pamela McKinney's vehicle was limited to the driver side. In this regard, we reject defendant's claim that she may have maneuvered in the direct path of an oncoming bullet because she drove in a zigzag manner. Testimony was presented that defendant was a hunter, supporting a reasonable inference that he had the ability and knowledge to handle a firearm. Given this evidence, the prosecution introduced sufficient evidence for a rational juror to find beyond a reasonable doubt that defendant had the specific intent to commit murder and that he committed the crimes for which he was charged.

*McKinney*, 2005 WL 292746 at *4.

Having reviewed the record, this Court finds that the Michigan Court of Appeals' determination in this regard is neither contrary to *Jackson* nor an unreasonable application of the law or the facts. The testimony of the victim and the eyewitnesses, as well as the ballistic evidence, provide sufficient evidence to establish that Petitioner had the requisite intent to commit murder and that he used his car in a manner capable of inflicting serious injury. The trial testimony indicated that Petitioner harassed and made threatening statements to Pamela McKinney prior to the incident, that he chased and rammed her car with his van during the incident, and that he fired several shots at the driver's side of her car with a 12-gauge shotgun before fleeing the scene. There was substantial evidence of his guilt.

Petitioner's insufficiency of evidence claim attacks the inferences that the jury drew from the testimony and evidence presented at trial. Such determinations, however, are not matters for federal habeas review. "A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).

Additionally, to the extent that Petitioner challenges the Michigan Court of Appeals' construction or application of state law, he is not entitled to habeas relief. "A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254. A federal court may not issue the writ on the basis of a perceived error of state law." *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Given the testimony of the victim and eyewitnesses, as well as the ballistic evidence, this Court finds that the state court's

decision, that a rational trier of fact could find the essential elements of the crimes charged beyond a reasonable doubt, was reasonable. Petitioner is not entitled to relief on this claim.

B.     <u>Jury Instruction Claim</u>

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in instructing the jury. Specifically, Petitioner alleges that the trial court should have instructed the jury on the definition of murder. Respondent contends that this claim is waived, procedurally defaulted, not cognizable upon habeas review and/or lacks merit.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright*, 433 U.S. at 85; *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001); *see also Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

The United States Court of Appeals for the Sixth Circuit employs a four-part test to determine whether a state procedural default bars federal habeas review. The inquiry is whether:

> (1) a state procedural rule exists that applies to the petitioner's claim, (2) the petitioner failed to comply with the rule, (3) the state court actually applied the state rule in rejecting the petitioner's claim, and (4) the state procedural rule is an adequate and independent ground upon which the state can rely to deny relief.

*Frazier v. Huffman*, 343 F.3d 780, 790 (6th Cir. 2003) (citing *Reynolds v. Berry*, 146 F.3d 345, 347 (6th Cir.1998)). All four parts of the test are met here. The Michigan Court of Appeals rendered the last reasoned opinion on this issue. In dismissing this claim, the court relied upon Petitioner's failure to request the instruction or specifically object at trial. *See McKinney*, 2005

WL 292746 at *4. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied this claim based upon a procedural default – the failure to request the instruction or object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. A petitioner must present a substantial reason to excuse the default. *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988); *Rust*, 17 F.3d at 161. Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). Petitioner alleges ineffective assistance of counsel as cause to excuse his default. Petitioner, however,

cannot establish that counsel erred or that he was prejudiced as this claim lacks merit.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly. *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial court record. *See Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996).

Additionally, the failure to give a defense instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief; the failure to instruct must have rendered the petitioner's trial fundamentally unfair. *See Maes v. Thomas*, 46 F.3d 979, 984-85 (10th Cir. 1995); *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1995). A failure to instruct does not deprive a petitioner of fundamental fairness where the instructions as a whole adequately present the defense theory to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

Petitioner asserts that the trial court erred in failing to *sua sponte* instruct the jury on the definition of murder since he was charged with assault with intent to commit murder. This claim lacks merit. The record reveals that the trial court properly instructed the jury on the elements of the charged offenses. Further, as to specific intent, the court instructed the jurors that Petitioner could be found guilty of assault with intent to murder only if they found beyond a

reasonable doubt that he intended to kill Pamela McKinney.  *See* 7/24/03 Trial Tr. pp. 64-65.

The jury was well aware of Petitioner's defense that he lacked the intent to kill Pamela

McKinney.  The jury could not have accepted Petitioner's defense without acquitting him under

the instructions given by the trial court, and this Court must presume that the jury followed the

state court's instructions.  *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *see also United

States v. Olano*, 507 U.S. 725, 740 (1993).  Where, as here, the instructions as a whole

adequately convey the defense theory of the case to the jury, a petitioner is not entitled to

habeas relief based on the trial court's failure to give a specific instruction.  *See, e.g.*, *Rodriguez

v. Young*, 906 F.2d 1153, 1166 (7th Cir. 1990).  Petitioner has not established that the failure to

instruct the jury on the definition of murder rendered his trial fundamentally unfair, and has

failed to establish cause or prejudice to excuse his procedural default.

Petitioner has also not established that a fundamental miscarriage of justice has

occurred.  The miscarriage of justice exception requires a showing that a constitutional violation

probably resulted in the conviction of one who is actually innocent.  *See Schlup v. Delo,* 513

U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal

insufficiency."  *Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim

of actual innocence] requires petitioner to support his allegations of constitutional error with

new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence – that was not presented at trial."  *Schlup*, 513 U.S. at

324.  Petitioner has made no such showing.  Petitioner's jury instruction claim is barred by

procedural default, lacks merit, and does not warrant habeas relief.

C.     Prosecutorial Misconduct Claims

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged

in misconduct by introducing prior bad acts evidence, by failing to give notice of such evidence

under the Michigan Rules of Evidence, by arguing facts not in evidence, by expressing a personal belief in his guilt, by making an improper civic duty argument, and by misstating the law during closing arguments. Petitioner also asserts that the cumulative effect of the prosecutor's conduct justifies relief. Respondent contends that these claims are barred by procedural default and/or lack merit.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)

(citations omitted).

Petitioner first asserts that the prosecutor improperly interjected prior bad acts evidence into the trial by eliciting testimony from Pamela McKinney that she had obtained a personal protection order ("PPO") against Petitioner and by referring to such evidence during closing arguments. Like the jury instruction claim, this claim is procedurally defaulted due to Petitioner's failure to object at trial. *See McKinney*, 2005 WL 292746 at *4-5; *see also* discussion *supra*. Petitioner alleges that trial counsel was ineffective as cause to excuse his default. Petitioner, however, cannot establish that counsel erred or that he was prejudiced by counsel's conduct as this claim lacks merit.

In reviewing this claim for plain error, the Michigan Court of Appeals concluded that the PPO testimony was relevant and admissible to prove Petitioner's motive and intent to kill Pamela McKinney. *See McKinney*, 2005 WL 292746 at *5. Given the state court's determination that the evidence was properly admitted under state law, Petitioner cannot establish that the prosecutor engaged in misconduct by eliciting or referring to such testimony. Moreover, the Court notes that the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[1] "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Furthermore, the prosecutor did not make a character or propensity argument and the trial court instructed the jury about the proper consideration of the evidence. Petitioner has not shown that

---

[1] While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

the admission of the other acts evidence rendered his trial fundamentally unfair. Petitioner has also not shown that the prosecution's failure to provide him proper notice of the prior bad acts evidence under the Michigan Rules of Evidence violated his constitutional rights. It is well-established that habeas relief is not warranted based upon a perceived violation of state law. *See Estelle, supra.* Moreover, Petitioner was well aware of the PPO's existence and had an opportunity to challenge the evidence. Petitioner has failed to establish cause or prejudice to excuse his procedural default. He has also not shown that a fundamental miscarriage of justice has occurred. *See* discussion *supra*. This claim is barred by procedural default, lacks merit, and does not warrant relief.

Petitioner also asserts that the prosecutor engaged in misconduct by arguing facts not in evidence by stating that a forensic examination was not performed because it was unnecessary, that the knife, shovel, and rubber gloves found in Petitioner's van were not normal, that Petitioner did not snap, and that Petitioner would not receive mental health services. It is well-settled that it is misconduct for a prosecutor to misstate the evidence or to assume the existence of prejudicial facts not in evidence. *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986); *United States v. Everett*, 270 F.3d 986, 993 (6th Cir. 2001). However, a prosecutor has leeway to argue reasonable inferences from the evidence presented at trial. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).

The Michigan Court of Appeals denied relief on this claim, finding that the prosecutor's comments were based upon the evidence or reasonable inferences from the evidence and were made in response to defense arguments. *See McKinney*, 2005 WL 292746 at *5. This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecutor's arguments were reasonable comments derived from the evidence. Further, even if any of the comments were improper, they were not so flagrant as to render the

trial fundamentally unfair, particularly given the evidence of guilt presented at trial. Petitioner is not entitled to relief on this claim.

Petitioner next asserts that the prosecutor engaged in misconduct by expressing a personal belief in his guilt. Specifically, Petitioner objects to the prosecutor's statements that the case was "straightforward," that an "innocent man would not have run away," and that Pamela McKinney would not return home after the incident. It is well-settled that it is improper for a prosecutor to express his or her own personal beliefs as to a defendant's guilt or to express personal opinions concerning a witness's credibility. *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charge against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own. *See United States v. White*, 58 Fed. Appx. 610, 617-18 (6th Cir. 2003) (citing cases).

The Michigan Court of Appeals determined that the prosecutor's conduct was not improper because the prosecutor argued facts in evidence. *See McKinney*, 2005 WL 292746 at *5. This Court agrees. The prosecutor's comments were based upon the testimony and reasonable inferences therefrom. A prosecutor has leeway to argue reasonable inferences from the evidence. *See Byrd*, 209 F.3d at 535. Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). The prosecutor did not express a personal belief in Petitioner's guilt nor improperly vouch for any witnesses. Petitioner has failed to establish that the prosecutor's argument was improper or that it rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

Petitioner next asserts that the prosecutor made an improper civic duty argument by stating that the victim "went through a horrible ordeal...I ask you to do your job and that you give her piece of mind." A prosecutor may not make remarks "calculated to incite the passions and prejudices of the jurors." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991). The Michigan Court of Appeals noted that a prosecutor may use hard and emotional language, and concluded that even if the remarks were improper, they were isolated and cured by the trial court's instructions that the jury should not be influenced by sympathy and that the attorneys' arguments were not evidence. *See McKinney*, 2005 WL 292746 at *6. The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The court reasonably found that even if the prosecutor's comments were improper, they did not prejudice Petitioner nor render his trial fundamentally unfair, particularly given the overwhelming evidence of guilt. Habeas relief is not warranted.

Petitioner also asserts that the prosecutor misstated the law during closing arguments by stating that if the jury found Pamela McKinney credible, it must find Petitioner guilty. A prosecutor in a criminal case may not misstate the law. *See, e.g., Caldwell v. Mississippi*, 472 U.S. 320 (1985). In this case, the Michigan Court of Appeals found that this claim was belied by the record which revealed that the prosecution stated, "If you heard Pamela McKinney's testimony ... and you find her to be a credible witness, that is all you need to convict this man of all three crimes he's charged with." The court found that the prosecutor's statement was not improper and accurately reflected the law that the jury could reject or accept the victim's testimony. *See McKinney*, 2005 WL 292746 at *6. This determination is entitled to deference on habeas review as state courts are the final arbiters of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Petitioner has not shown that the prosecutor erred. The Michigan

Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. Habeas relief is not warranted on this claim.

Lastly, Petitioner asserts that the cumulative effect of the prosecutor's conduct rendered his trial unfair. The Michigan Court of Appeals rejected this claim because Petitioner had failed to establish any errors requiring reversal. *See McKinney*, 2005 WL 292746 at *6. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Given the Court's determination that Petitioner's prosecutorial misconduct claims lack merit, he cannot establish that habeas relief is warranted based upon cumulative error. Further, the United States Court of Appeals for the Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Petitioner is therefore not entitled to relief on this claim.

D.   Ineffective Assistance of Counsel Claims

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the jury instructions, the PPO evidence, and the prosecutor's conduct. Petitioner also asserts that counsel was ineffective for failing to seek an independent psychiatric evaluation to pursue an insanity defense. Respondent contends that these claims lack merit.

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" to prove deficient performance. *Id.* at 690. A habeas court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

As noted, Petitioner first asserts that counsel was ineffective for failing to object to the jury instructions, the PPO evidence, and the prosecutor's conduct. Applying the *Jackson* standard, the Michigan Court of Appeals denied relief on this claim based upon its determination that Petitioner had failed to establish the underlying errors such that any objection by trial counsel to such matters would have been meritless. *See McKinney*, 2005 WL 292746 at *6-7. This Court agrees. Given that the foregoing issues lack merit, Petitioner cannot establish that counsel erred. Defense counsel cannot be deemed deficient for failing to make a futile objection or motion. *See McQueen*, 99 F.3d at 1328. Furthermore, Petitioner has not shown that he was prejudiced by counsel's conduct. Habeas relief is not warranted on this basis.

Petitioner also claims that counsel was ineffective for failing to seek an independent psychiatric evaluation to pursue an insanity defense. The record indicates that trial counsel filed an insanity defense notice with the trial court, which ordered Petitioner to be evaluated to determine whether he was competent to stand trial and whether he was criminally responsible. The evaluation stated that Petitioner was competent to stand trial and was criminally responsible for his acts although he suffered mental health problems. Trial counsel did not seek another evaluation and elected not to pursue an insanity defense at trial.

The Michigan Court of Appeals denied relief on this claim, stating in relevant part:

> The failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense. *People v. Daniel*, 207 Mich App 47, 58;523 NW2d 830 (1994). A substantial defense is one that might have made a difference in the outcome of the trial. *Id.* The decision whether to present an insanity defense can be an issue of trial strategy, and this Court will not reverse where failure to raise an insanity defense is a question of trial strategy. *People v. Newton (After Remand)*, 179 Mich App 484, 493; 446 NW2d 487 (1989). Insanity is an affirmative defense that requires proof that, as a result of mental illness or mental retardation, the defendant lacked substantial capacity either to appreciate the nature and quality or the wrongfulness of his conduct or to conform his conduct to the requirements of the law. MCL 768.21a(1); *see also People v. Carpenter*, 464 Mich 223, 230-231; 627 NW2d 276 (2001).

> We initially note that defendant has attached over two-hundred pages of medical records dating from 1996 to 2001 to his standard 11 brief to establish a basis for pursuing an insanity defense; however, these records are not reviewable as they are not properly before this Court. We reiterate that because defendant failed to move for a new trial or *Ginther* hearing, this Court's review is limited to mistakes on the record. *Darden, supra* at 604. In any event, we note there is nothing in the medical records pertaining to his mental condition near the time of the instant offense.

> Hence, there is no record evidence before this Court to establish that defendant lacked the substantial capacity to appreciate the nature and quality or the wrongfulness of his conduct or to conform his conduct to the requirements of the law. Rather, the record shows defendant sent Pamela McKinney a letter apologizing for his actions. Given this evidence, taken together with defendant's advance messages of "soon" to Pamela McKinney, we conclude that it is not reasonably likely that had an insanity defense been presented, the result of the proceedings would have been different.

Nor does the record show that defendant was denied a substantial defense. Trial counsel aggressively argued that defendant lacked the specific intent to kill Pamela McKinney. Trial counsel challenged the prosecution's interpretation of the word "soon." While the prosecution argued that the word reflected premeditation and defendant's specific intent to commit the instant offense, trial counsel argued that it reflected defendant's intent to commit another suicide attempt. Trial counsel also reiterated that defendant's and Pamela McKinney's meeting on that particular road on the day in question was pure coincidence because they approached each other from opposite directions. Trial counsel also argued that defendant had ample opportunity to kill Pamela McKinney because he was a "hunter and killer" with the skills necessary to effectuate a killing if that were his true objective. The fact that the jury rejected trial counsel's argument that he only intended to scare Pamela McKinney does not negate trial counsel's ability to forego an insanity defense as trial strategy. *Matuszak, supra* at 61 (a particular strategy does not constitute ineffective assistance of counsel simply because it does not work); *Newton, supra* at 493. In sum, defendant has failed to rebut the presumption that he received the effective assistance of counsel.

*McKinney*, 2005 WL 292746 at *7-8.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. It is well-settled that defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *See Strickland*, 466 U.S. at 690-91; *Lundgren v. Mitchell*, 440 F.3d 754, 771 (6th Cir. 2006); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994) (failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation is not warranted). Petitioner, however, has not established that defense counsel's performance was deficient. The record reveals that counsel was well aware of Petitioner's mental health issues, which included a history of depression, and that he requested a competency and criminal responsibility evaluation before trial. After reviewing that evaluation, which found Petitioner competent and criminally responsible for his actions, and after consulting with Petitioner, counsel reasonably determined that Petitioner was competent and that an insanity defense would be unsuccessful at trial.

Under Michigan law, a criminal defendant has the burden of proving the affirmative

defense of insanity by a preponderance of the evidence. To establish such a defense, the defendant must show that, at the time of the offense, he had a mental illness or was mentally retarded and that, as a result, he lacked the substantial capacity either to appreciate the nature and quality or the wrongfulness of his conduct or conform his conduct to the requirements of the law. *See* Mich. Comp. L. § 768.21a; *People v. Carpenter*, 464 Mich. 223, 230-31, 627 N.W.2d 276 (2001). There is no evidence in the record which demonstrates that Petitioner is mentally retarded or that he was experiencing mental illness symptoms which prevented him from understanding the nature or wrongfulness of his conduct or from conforming his conduct to the law. Petitioner has not submitted reports which indicate that an insanity defense was viable or would have prevailed at trial. The mere fact that he may suffer from depression or other mental health problems does not mean that he was legally insane at the time of the offense.

Moreover, as one court has noted: "There is considerable empirical evidence that insanity pleas in and of themselves are not received favorably by jurors." *Weekley v. Jones*, 76 F.3d 1459, 1463 (8th Cir. 1996) (referencing legal journal). Since insanity-type defenses are rarely successful, it was not unreasonable for counsel, under the facts of this case, to forego such a defense for a more plausible defense theory. *See, e.g., Silva v. Woodford,* 279 F.3d 825, 851 (9th Cir. 2002). Petitioner has failed to show that trial counsel erred in deciding not to seek a second psychiatric evaluation and to forego an insanity defense and to instead argue that Petitioner lacked the specific intent to kill the victim. The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Furthermore, trial counsel's decision to forego further investigation into a possible

insanity defense did not prejudice Petitioner given that the evidence of Petitioner's intent to kill his ex-wife and reflect upon those actions was clear. *See Williams v. Calderon*, 52 F.3d 1465, 1470 (9th Cir. 1995). The evidence at trial showed that Petitioner made threatening remarks to Pamela McKinney before the incident, that he rammed her car with his van and fired multiple shots at her during the incident, that he fled the scene following the incident, and that he subsequently sent her a letter apologizing for his actions. The substantial evidence of Petitioner's intent to kill and his awareness of his improper conduct negates any reasonable probability that an insanity defense would have been successful. Petitioner has not shown that trial counsel was ineffective under the standard set forth in *Strickland, supra,* nor has he shown that he was deprived of a substantial defense. Habeas relief is not warranted on this claim.

## V. CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for writ of habeas corpus.

**IT IS SO ORDERED**.

s/Denise Page Hood

Dated:  June 30, 2008                United States District Judge

### Certificate of Service

I hereby certify that a copy of the foregoing document was served upon counsel of record and Matthew McKinney, #467039, Kinross Correctional Facility, 16770 Watertower Drive, Kincheloe MI 49788 on June 30, 2008, by electronic and ordinary mail, respectively.

s/Lisa Ware
Acting in the Absence of William Lewis
Case Manager to Judge Denise Page Hood